IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:15-CV-282-FL

THOMPSON AUTOMOTIVE LABS, INC., )
)
Plaintiff/Counter-Defendant, )
)
v. ) **ORDER**
)
ILLINOIS TOOL WORKS INC., )
)
Defendant/Counter-Plaintiff. )

This case comes before the court on a motion (D.E. 79) by plaintiff/counter-defendant Thompson Automotive Labs, LLC ("plaintiff") to compel supplemental responses to interrogatories nos. 11, 13, 15, and 18 and requests for production of documents nos. 21-25, 62-68, 79, 82, 85, and 91-96 in its first set of discovery requests to defendant/counter-plaintiff Illinois Tool Works Inc. ("defendant" or "ITW"). Defendant opposes the motion, which has been fully briefed. For the reasons set forth below, the motion will be denied.

I. **BACKGROUND**

Plaintiff's claims arise from an Exclusive Supply Agreement (the "Agreement") entered into by the parties. *See* 1st Supp. Compl. ("complaint") (D.E. 21) ¶¶ 1. Specifically, under the Agreement, defendant agreed to purchase a certain number of plaintiff's Combustion Performance Test Tools, or CPT Tools. *Id.* ¶¶ 1, 29. After an attempt by defendant to purchase plaintiff's CPT Tool technology was not successful, plaintiff contends that defendant breached the Agreement and marketed and sold a competing product, the AutoEKG, a product which it contends infringes plaintiff's trademarks and trade dress. *Id.* ¶¶ 60, 75. In its complaint, plaintiff asserts claims for breach of contract (*id.* ¶¶ 104-07); trademark and trade dress infringement (*id.* ¶¶ 108-18);

inducement of trademark and trade dress infringement (*id.* ¶¶ 119-24); false advertising and unfair competition (*id.* ¶¶ 125-33); violations of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75.1-1 *et al.* (*id.* ¶¶ 134-39); and cancellation of United States trademark registration no. 4,771,676 (*id.* ¶¶ 140-49). Defendant asserts a number of affirmative defenses as well as counterclaims for breach of contract (Am. Aff. Defs. & Counterclaims (D.E. 43) ¶¶ 47-52); fraudulent misrepresentation (*id.* ¶¶ 53-62); fraudulent concealment (*id.* ¶¶ 63-73); negligent misrepresentation (*id.* ¶¶ 74-83); violations of the North Carolina Unfair and Deceptive Trade Practices Act (*id.* ¶¶ 84-90); and rescission based on unilateral mistake (*id.* ¶¶ 91-98) or alternatively, rescission based on mutual mistake (*id.* ¶¶ 99-108). Plaintiff denies the material allegations of the counterclaims. *See generally* Ans. to Am. Counterclaims (D.E. 44).

Plaintiff served its first set of interrogatories (Interrogs. (D.E. 80-1)) and first requests for production of documents (Prod. Reqs. (D.E. 80-2)) on 26 January 2016. On 29 February 2016, defendant served its responses to the discovery requests. *See* Resp. to Interrogs. (D.E. 80-3); Resp. to Prod. Reqs. (D.E. 80-4). Defendant objected to all the discovery requests at issue. In response to interrogatory no. 11, it stated that it would provide no additional information; in response to interrogatories nos. 13 and 15, it stated that it would provide information after entry of an acceptable protective order; and in response to interrogatory no. 18, it provided some of the information requested. *See* Resp. to Interrogs. Nos. 11, 13, 15, 18. In response to production requests nos. 22, 24, 91, 93, and 95, defendant stated that it would produce some documents requested after entry of an acceptable protective order; and in response to the other production requests that it would not produce any of the documents requested. *See* Resp. to Prod. Reqs. Nos. 21-25, 62-68, 79, 82, 85, 91-96. A protective order was entered on 3 October 2016 (D.E. 66). On 8 February 2017 and 9 February 2017, plaintiff notified defendant of alleged deficiencies in

2

defendant's responses. *See* 8 Feb. 2017 Ltr. (D.E. 80-5); 9 Feb. 2017 Ltr. (D.E. 80-6). Defendant served supplemental responses to interrogatories nos. 13, 15, and 18 on 27 February 2017. Supp. Resp. to Interrogs. (D.E. 80-7) Nos. 13, 15, 18. Defendant did not serve any supplemental responses to the production requests. In an email sent 15 May 2017 (consisting of pp. 2-3 of D.E. 82-4), plaintiff requested that the discovery requests at issue in its motion be included in a telephonic discovery conference with the court which defendant had requested pursuant to § II.D of the Case Management Order ("CMO") (D.E. 32) (*see* 3 May 2017 Email (consisting of pp. 7-8 of D.E. 82-4)).

The conference was held on 23 May 2017. *See* Minute Entry on 23 May 2017 Conf. In a written order entered that day memorializing deadlines stated during the conference, the court permitted plaintiff to file by 6 June 2017 a motion relating to the matters presently at issue if they were not resolved by that date by the parties. *See* Ord. on 23 May 2017 Conf. (D.E. 77) ¶ 3. Plaintiff filed the instant motion to compel on that date.

Again, the discovery requests as to which plaintiff seeks an order compelling supplemental responses are interrogatories nos. 11, 13, 15, and 18 and requests for production of documents nos. 21-25, 62-68, 79, 82, 85, and 91-96. These discovery requests relate to (1) financial information concerning defendant's liquids, supplies, or other related products, and (2) technical data regarding defendant's AutoEKG. Defendant opposes the motion, arguing that it is untimely and seeks production of information and documents not relevant under the Federal Rules of Civil Procedure.

## II. APPLICABLE LEGAL PRINCIPLES

The Federal Rules of Civil Procedure enable parties to obtain information by serving requests for discovery on each other, including interrogatories and requests for production of documents. *See generally* Fed. R. Civ. P. 26-37. Rule 26 provides for a broad scope of discovery:

3

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

The district court has broad discretion in determining relevance for discovery purposes. *Seaside Farm, Inc. v. United States*, 842 F.3d 853, 860 (4th Cir. 2016); *Watson v. Lowcountry Red Cross*, 974 F.2d 482, 489 (4th Cir. 1992). The party resisting discovery bears the burden of establishing the legitimacy of its objections. *Eramo v. Rolling Stone LLC*, 314 F.R.D. 205, 209 (W.D. Va. 2016) ("[T]he party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion." (quoting *Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 226, 243 (M.D.N.C. 2010))); *Brey Corp. v. LQ Mgmt., L.L.C.*, No. AW-11-cv-00718-AW, 2012 WL 3127023, at *4 (D. Md. 26 Jul. 2012) ("In order to limit the scope of discovery, the 'party resisting discovery bears the burden of showing why [the discovery requests] should not be granted.'" (quoting *Clere v. GC Servs., L.P.*, No. 3:10-cv-00795, 2011 WL 2181176, at *2 (S.D. W. Va. 3 June 2011))).

Rule 33 governs interrogatories. Fed. R. Civ. P. 33. It provides that "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." Fed. R. Civ. P. 33(a)(1). Rule 33 requires that a party served with interrogatories answer each fully under oath to the extent that the party does not object to the interrogatory. *Id.*(b)(3). Objections not made timely are waived, subject to the court excusing the untimeliness for good cause. *Id.*(b)(4).

Rule 34 governs requests for production of documents. A party asserting an objection to a particular request "must specify the part [to which it objects] and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C).

Rule 37 allows for the filing of a motion to compel discovery responses. *See* Fed. R. Civ. P. 37(a)(3)(B). Rule 37 requires that a motion to compel discovery "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." *Id.*(a)(1). Similarly, Local Civil Rule 7.1(c), E.D.N.C. requires that "[c]ounsel must also certify that there has been a good faith effort to resolve discovery disputes prior to the filing of any discovery motions." Local Civ. R. 7.1(c), E.D.N.C.; *see Jones v. Broadwell,* No. 5:10-CT-3223-FL, 2013 WL 1909985, at *1 (E.D.N.C. 8 May 2013) (denying motion to compel which did not state that party complied with Rule 37(a) or Local Civil Rule 7.1(c)).

In addition, Rule 37 requires that the moving party be awarded expenses when a motion to compel discovery is granted except when the movant filed the motion without attempting in good faith beforehand to obtain the discovery without court intervention, the opposing party's opposition to the discovery was substantially justified, or other circumstances would make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(A). If a motion to compel is denied, expenses must be awarded to the person opposing the motion except when the motion was substantially justified or other circumstances would make an award of expenses unjust. *Id.*(a)(5)(B). If a motion to compel is allowed in part and denied in part, the court may apportion the expenses for the motion. *Id.*(a)(5)(C).

## III. ANALYSIS

The initial ground upon which defendant urges the court to deny plaintiff's motion to compel is that it was not timely filed pursuant to provisions in the CMO. The CMO provides in pertinent part:

> Any motion to compel discovery shall be filed and served **within 30 days** of the act or omission in discovery complained of, after good faith effort between the parties to resolve the matter, unless the time for filing such a motion is extended for good cause shown. Prior to any filing, the complaining party shall convene a conference among the parties and this court by telephone through the office of the case manager, at (252) 638-8534. . . . . Motions to compel filed after the deadline and/or without advance conference with the court, absent extenuating circumstances, summarily will be denied.

CMO § II.D (emphasis original).

The court agrees that plaintiff's motion was tardy. Defendant unambiguously indicated in the discovery responses it served on 29 February 2016 that it was not providing all the information or documents plaintiff requested. Thus, the 30-day limit arguably began running as to all the discovery requests on that date, yielding a motion deadline of 30 March 2016.

Of course, in response to two of the four interrogatories at issue (nos. 13 and 15), defendant stated that it would produce information upon entry of a satisfactory protective order. It stated in its response to 5 of the 21 production requests at issue (nos. 22, 24, 91, 93, 95) that it would produce some documents after entry of an acceptable protective order. A protective order was entered on 3 October 2016. Assuming plaintiff could reasonably allow defendant 30 days from that date or until 2 November 2016 to supplement its responses, plaintiff should have filed a motion to compel as to these responses by 2 December 2016.

Defendant subsequently confirmed that it would not be producing the information and documents plaintiff seeks by its motion without prompting plaintiff to seek relief from the court within 30 days. Specifically, by letter dated 17 February 2017, defendant reiterated its refusal to

6

supplement its production in the areas at issue, namely, "(1) financial information regarding sales of FSC fluids; and (2) technical data regarding the AutoEKG device beyond what ITW has already produced." 17 Feb. 2017 Ltr. (D.E. 80-8). Its supplemental responses to interrogatories, served 27 February 2017, did not include any supplementation for interrogatory no. 11 and purportedly deficient supplementation for interrogatories nos. 13, 15, and 18. There was no supplementation of defendant's responses to the production requests at issue. Plaintiff sought no relief from the court within 30 days after these events in February 2017.

Defendant reiterated its position in a 16 March 2017 letter to plaintiff. 16 Mar. 2017 Ltr. (D.E. 82-3). Again, plaintiff did not approach the court within 30 days. While plaintiff notes that at some point it "subsequently" requested by phone that defendant reconsider its position (*see* Pl.'s Mem. (D.E. 80) 2-3), plaintiff only first raised the issue with the court in its 15 May 2017 email. As noted, the email related to a discovery conference with the court that defendant had requested, not plaintiff. Plaintiff ultimately filed its motion on 6 June 2017.

Thus, plaintiff's motion can reasonably be deemed to have come more than a year—about 14 months—after it was due, in March 2016. Even if delay is deemed justified for the responses as to which defendant stated that it was awaiting entry of a protective order, which occurred in October 2016, plaintiff's motion was filed about seven months after it was plausibly due in December 2016. Between that date and the filing date, plaintiff was given repeated reminders by defendant that the requested information and documents would not be forthcoming, but it did not act to curtail the delay.

In its memorandum, plaintiff does not directly address its tardiness. In particular, it presents no "extenuating circumstances" that would justify its failure to meet the 30-day deadline

7

for its motion, however calculated. CMO § II.D. Indeed, it would be difficult to conceive of any circumstances that would justify a delay of this magnitude.

While plaintiff now contends that the documents and information it seeks by its motion to compel are critical to the prosecution of its case, its lack of diligence in pursuing production of these materials from defendant belies this contention.

The record clearly shows that plaintiff knew or should have known within the time allowed for its motion of the deficiencies in defendant's discovery responses it now alleges. At the same time, defendant could justifiably have proceeded with development of its case based on plaintiff's not seeking court action to secure production of the information and documents it now seeks.

Further, the CMO warned all parties that failure to file a motion by the applicable deadline would be summarily denied. CMO § II.D. Plaintiff was therefore on notice of the consequences of not acting timely.

Scheduling orders such as the CMO are, of course, critical tools used by the courts to ensure that litigation proceeds in a timely, orderly, and efficient manner. "[T]he scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.'" *Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C. 1987) (quoting *Gestetner Corp. v. Case Equipment Co.*, 108 F.R.D. 138, 141 (D. Me. 1985)). To acquiesce in plaintiff's unjustified delay here would disrupt proceedings in this case and set a precedent that could undermine compliance with scheduling orders in future cases.

The court will accordingly deny plaintiff's motion as tardy. It therefore does not reach the other grounds asserted by defendant for denial of the motion.

While ordinarily denial of a motion to compel for unjustifiable tardiness, as here, would merit the award of expenses, the fact the court permitted plaintiff to file a motion—though without

8

ruling on the issue of tardiness—would make the award of expenses unjust. *See* Fed. R. Civ. P. 37(a)(5)(B); Ord. on 23 May 2017 Conf. ¶ 3. The court will accordingly direct that each party bear its own expenses.

## IV.  CONCLUSION

For the reasons stated, IT IS ORDERED as follows:

1. Plaintiff's motion to compel (D.E. 79) is DENIED.

2. Each party shall bear its own expenses incurred on the motion.

SO ORDERED, this 11th day of December 2017.

James E. Gates
United States Magistrate Judge